JAMES DONOVAN *vs.* SUFFOLK COUNTY APPORTIONMENT COMMISSIONERS.

HERMAN HORMEL *vs.* SAME.

Suffolk.   September 26, 1916. — October 5, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Constitutional Law,* Apportionment of representation. *House of Representatives.* *Suffolk County Apportionment Commissioners. Mandamus.*

An attempted apportionment of representation in the legislative districts of Suffolk County by commissioners elected under St. 1913, c. 835, § 390, which allots three representatives to 7,946 voters and only two representatives to 8,613

voters and allots two representatives to 4,854 voters and only one representative to 5,596, is void, because it does not apportion the representatives assigned to Suffolk County "equally, as nearly as may be, according to the relative number of legal voters," as required by art. 21 of the Amendments to the Constitution.

A petition for a writ of mandamus addressed to the Suffolk County apportionment commissioners declaring void an attempted apportionment of representation in the legislative districts of that county and ordering the commissioners to perform their duty in conformity to art. 21 of the Amendments to the Constitution may be maintained by a voter in a district against which discrimination was made in the attempted apportionment.

Upon the question of granting such a petition evidence as to the reasons that influenced the commissioners in making the apportionment sought to be set aside is immaterial, and the report of the commissioners must be judged by what appears on its face in the light of the facts judicially known to the court.

RUGG, C. J.   These two petitions for writs of mandamus are brought to set aside a report of the commissioners (elected according to St. 1913, c. 835, § 390) dividing Suffolk County into representative districts and apportioning among them the number of representatives allotted under St. 1916, c. 270, § 24, on the ground that it violates the rights of the petitioners secured by art. 21 of the Amendments to the Constitution.

Since the decision of *Attorney General* v. *Apportionment Commissioners,* 224 Mass. 598, wherein it was necessary to declare their first report manifestly contrary to the provisions of the Constitution, the commissioners have filed this new and second report of apportionment.

The present report is assailed as to four districts, each conterminous with a ward of Boston.   District No. 3, containing 4,854 legal voters, is given two representatives or one for 2,427 legal voters. District No. 5, with 7,946 legal voters, is given three representatives.   District No. 6, with 8,618 legal voters, is given two representatives.   District No. 23, with 5,596 legal voters, is given one representative.   The disparity between the smallest and largest number of legal voters for one representative is the difference between 2,427 in District No. 3 and 5,596 in District No. 23, or 3,169.   Each voter in Districts 3 and 5 is given more than twice the voting power for representatives in the General Court given to each voter in District No. 23.   District No. 5 is given one more representative than is given to 672 more legal voters in District No. 6.   District No. 3 is given one more representative than is given to District No. 23 with 742 more voters.

The mandate of the Constitution is that the county shall be divided "into representative districts . . . so as to apportion the representation assigned . . . equally, as nearly as may be, according to the relative number of legal voters in the several districts." It is manifest that the constitutional mandate has not been followed in this report. It is not an approximation to equality to allot three representatives to 7,946 voters and only two representatives to 8,618 voters, and to allot two representatives to 4,854 voters and one representative to 5,596 voters. The number of these representatives is in inverse proportion to the number of voters. It requires no argument to demonstrate that a reversal of this allotment would be a much nearer approach to equality. This report confers special power in the election of representatives to voters in favored districts as compared with voters in other districts against which discrimination is made. This disparity in favor of the privileged districts as against the disparaged districts is not insignificant nor negligible, but, besides the additional discriminatory representation given to each favored district, is 672 in one instance and 742 in another, in themselves very considerable numbers as compared with 3,258, which is the representative unit of Suffolk County.

Whenever this kind of inequality of apportionment has been before the courts, it has been held to be contrary to the Constitution. It has been said to be "arbitrary and capricious and against the vital principle of equality." *Supervisors of Houghton County* v. *Secretary of State,* 92 Mich. 638, 647, 653. *Giddings* v. *Secretary of State,* 93 Mich. 1, 13. *Parker* v. *State,* 133 Ind. 178, 197. *Denney* v. *State,* 144 Ind. 503, 535. See, also, *Goodrich* v. *Lunenburg,* 9 Gray, 38, and *Stone* v. *Bean,* 15 Gray, 42. This report does not apportion the representatives assigned to Suffolk County "equally, as nearly as may be, according to the relative number of legal voters." The inequality disclosed on the face of this report is grave and might have been avoided to a considerable degree if the rule established by the Constitution had been heeded. It is not in accordance with the Constitution. It is contrary to the principles discussed at length in *Attorney General* v. *Apportionment Commissioners,* 224 Mass. 598.

The petitioners are entitled to maintain the present petitions. They are voters in districts against which discrimination is

made. *Attorney General* v. *Apportionment Commissioners,* 224 Mass. 598.

. The single justice * heard evidence as to the reasons which influenced the commissioners in making the apportionment, and found certain facts to be considered "if deemed material by the full court." We are of opinion that evidence is not material upon this point. The commissioners act as independent officers in the performance of a duty imposed by the Constitution. No provision is made for a revision of their conduct or a review of their report. It stands unless manifestly contrary to the Constitution and therefore a nullity. The report is entitled to all the presumptions which ordinarily are made in favor of the constitutionality of a statute. See *Commonwealth* v. *Boston & Northern Street Railway,* 212 Mass. 82, 86; *Commonwealth* v. *Moore,* 214 Mass. 19, 24. No evidence is received as to the motives or purposes of members of the Legislature in enacting a statute. Good intentions of commissioners cannot make valid a report on its face obnoxious to the requirements of the Constitution. The report must be judged by what appears on its face in the light of facts of which the court can take notice.

Let the entry be in substance, that the present division and apportionment of the county of Suffolk into representative districts, made and filed by the commissioners, is void as not in conformity to the Constitution, and that the commissioners proceed "as soon as may be" to divide the county of Suffolk into representative districts so as to apportion the number of representatives assigned to that county "equally, as nearly as may be, according to the relative number of legal voters" in the several districts, and otherwise in conformity to the Constitution and to art. 21 of the Amendments to the Constitution, and to make due report thereof as required by said article of amendment.

*So ordered.*

The cases were argued at the bar in September, 1916, before *Rugg,* C. J., *Loring, Braley, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices except *De Courcy,* J.

*N. Matthews & A. D. Hill,* (*F. G. Goodale* with them,) for the petitioners.

*W. A. Buie,* for the respondents.

---

* *De Courcy,* J., who with the consent of counsel reported the cases for determination by the full court.